DAN RAYFIELD
Attorney General
BRIAN SIMMONDS MARSHALL #196129
NINA ENGLANDER #106119
Senior Assistant Attorneys General
DEREK OLSON #225504
Assistant Attorney General
Trial Attorneys
Department of Justice
100 SW Market Street
Portland, OR 97201
Telephone: (9716731880
Fax: (9716735000
Email:  Brian.S.Marshall@doj.oregon.gov
        Nina.Englander@doj.oregon.gov
        Derek.Olson@doj.oregon.gov

Attorneys for Plaintiff, State of Oregon


IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


| | |
|---|---|
| STATE OF OREGON,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>KRISTI NOEM, in her official capacity as Secretary of Homeland Security; UNITED STATES DEPARTMENT OF HOMELAND SECURITY; UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT; and TODD M. LYONS, in his official capacity as the Senior Official Performing the Duties of the Director of United States Immigration and Customs Enforcement,<br><br>　　　　　Defendants. | Case No. 6:26-cv-00186-AA<br><br>CONFORMING COMPLAINT |


Page 1 -   CONFORMING COMPLAINT
　　BM2/jt3

# I.    INTRODUCTION

1.    This is an action for declaratory and injunctive relief under the Administrative Procedure Act (APA), 5 U.S.C. § 701 *et seq.*, the Coast Zone Management Act (CZMA), 16 U.S.C. § 1456(c), and the National Environmental Policy Act (NEPA), 42 U.S.C. § 4321 *et seq.*, to halt the unlawful construction of a mass federal detention center for Defendant Immigration and Customs Enforcement (ICE) to detain up to 200 noncitizens on the Oregon Coast in or around the City of Newport. In addition, the State seeks a declaration that the creation of the ICE detention facility is *ultra vires* and void.

2.    In 2025, Defendants began furtively working to transform the Newport Municipal Airport into an ICE detention facility. Decl. of Ralph Ferguson (Ferguson Decl.) ¶ 3 (ECF 71, 6:25-cv-02165).  Since the Defendants apparently abandoned those efforts on December 4, 2025, on information and belief, those efforts have shifted to other potential nearby sites for a detention facility elsewhere on the Oregon Coast in or around Newport. Defendants have engaged in these efforts behind closed doors, with no transparency or public process, ignoring direct requests for information from local officials and members of Congress. As a result, the State has been forced to piece together Defendants' plans for the ICE detention facility based on public reporting, inquiries to and information from federal contractors, the second-hand account of a U.S. Coast Guard witness, and related evidence.

3.    Newport is adjacent to the ocean, where it is exposed to the elements, including strong wind, hail, and cold temperatures. This location is inhospitable and not equipped to house humans in temporary shelters or repurposed commercial buildings.

4.    The Oregon Department of Fish and Wildlife's Consolidated Wildlife Observation Database has documented observations of dozens of species in and around Newport, including marbled murrelets, California brown pelicans, western snowy plovers and many more. Several of the species observed in and around Newport are on Oregon's threatened and endangered species list, listed as threatened or endangered under the federal Endangered Species

Page 2 -    CONFORMING COMPLAINT
BM2/jt3

Act, identified as Species of Greatest Conservation Need in Oregon's revised State Wildlife Action Plan, or identified as Species of Greatest Information Need in Oregon's revised State Wildlife Action Plan.

5.      There are varied habitats in and around Newport that are important for conserving the fish and wildlife species that are at risk of decline. These habitats include flowing water and riparian, grassland, lakes, late successional mixed conifer, nearshore, oak habitat and wetlands.

6.      Newport is home to Yaquina Bay, which the Environmental Protection Agency (EPA) has listed as an impaired waterbody.

7.      There are EPA-listed hazardous waste sites in and around Newport.

8.      Newport is home to a Priority Wildlife Connectivity Area (PWCA), which is a large contiguous area that represents the highest-value habitat for facilitating species movement throughout the state. Dozens of species identified as Sensitive Species and Species of Greatest Conservation Need have a wildlife range in and around Newport.

9.      Defendants' construction of an ICE detention facility in or around Newport is unlawful. The hasty creation of a mass detention facility poses clear environmental impacts which, under NEPA, Defendants must consider *before* acting. But Defendants have failed to comply with NEPA's procedural requirements. Defendants have also failed to provide a consistency determination that the ICE detention facility is consistent to the maximum extent practicable with federally approved enforceable policies of Oregon's coastal management program, as required by the CZMA. Defendants' actions are thus *ultra vires*, contrary to law, and arbitrary and capricious. The State seeks an injunction and declaratory relief to halt pre-construction activities, construction, and related activities unless and until Defendants comply with NEPA and the CZMA.

## II.      JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 2201(a), and pursuant to the Administrative Procedure Act, 5 U.S.C. §§ 701–706.

Page 3 -    CONFORMING COMPLAINT

Department of Justice
100 SW Market Street
Portland, OR 97201
(9716731880 / Fax: (9716735000

11.     Venue is proper in the Eugene Division of the District of Oregon pursuant to 28 U.S.C. §§ 1391(b)(2), (e)(1), and LR 3-2(a)(3). Defendants are agencies of the United States and officers sued in their respective official capacities. The State of Oregon is a resident of this district, and a substantial part of the events or omissions giving rise to this complaint occurred and continue to occur within the Eugene Division of this district.

### III.     PARTIES

#### A.     Plaintiff

12.     The State of Oregon is a sovereign state of the United States of America. Oregon is represented by Attorney General Dan Rayfield. The Attorney General is the chief legal officer of Oregon and is authorized to institute this action.

#### B.     Defendants

13.     Kristi Noem is the Secretary of Homeland Security and the head of the U.S. Department of Homeland Security. She is sued in her official capacity.

14.     The U.S. Department of Homeland Security (DHS) is a department of the Executive Branch of the United States government. DHS is a federal agency within the meaning of the APA, 5 U.S.C. § 551(1).

15.     Todd Lyons is the Senior Official Performing the Duties of the Director of U.S. Immigration and Customs Enforcement (ICE).

16.     ICE is a federal agency within the meaning of the APA, 5 U.S.C. § 551(1). ICE is under the supervision of DHS.

### IV.     BACKGROUND

#### A.     Defendants are planning an ICE detention facility in or around Newport.

17.     Defendants have decided to authorize, fund, and maintain an ICE detention facility on the Oregon Coast, likely in or around Newport, Oregon. That decision constitutes final agency action, which DHS and ICE are actively implementing.

Department of Justice
100 SW Market Street
Portland, OR 97201
(9716731880 / Fax: (9716735000

18.     Defendants' decision-making and planning for the ICE detention facility is occurring behind closed doors, with no transparency or public process. Even Defendants' solicitation for contractors—which government agencies typically post publicly—have been issued directly to pre-vetted vendors with no public visibility. As a result, the State has been forced to piece together Defendants' plan for the ICE detention facility based on the following facts.

19.     During a deposition, U.S. Coast Guard Captain Kent Reinhold acknowledged internal discussions regarding preparing AIRFAC Newport to be used as an ICE facility that occurred in early November 2025.

20.     Team Housing Solutions, Inc.—a contractor that specializes in quickly standing up housing for troops and private-sector workers—sent a notice of intent to lease the 4.3 acres of land located at the Newport Municipal Airport for "federal operations" set to begin in December 2025 for a period of at least six months. The request outlines several different uses for the potential facility, including parking for unspecified equipment and vehicles and space for mobile office trailers, storage containers and generators. It proposes the creation of a 12-foot security fence around the leased area "for controlled access." Upon information and belief, this request was withdrawn after public outcry.

21.     Team Housing Solutions, Inc. has reached out to multiple hotels in Newport and along the Oregon coast to inquire about reserving as many as 200 hotel rooms for up to a year.

22.     ICE has hired a Project Manager/Environmental Scientist as a contractor to begin the process of initiating a CZMA consultation and developing a federal consistency determination for the ICE detention facility in Newport, Oregon.

23.     ICE has issued one or more solicitations for contractors to perform work related to the construction and utilization of the ICE detention facility. At least one of the solicitations seeks contractors to perform health services at the ICE detention facility as early as January 2026.

Page 5 -    CONFORMING COMPLAINT
BM2/jt3

24.     A contractor that specializes in rapidly deployable expeditionary healthcare services in remote and austere environments—including healthcare support for military exercises and operations, diplomatic missions, natural disasters, and refugee care—has posted twelve full-time job openings in Newport, Oregon. The open positions are listed as "hazardous duty" and include openings for a clinical director, registered nurse, pharmacist, physician, and a behavioral health specialist.

25.     Upon information and belief, ICE notified potential contractors that noncitizens arrested in Portland, and in a 350-mile radius from Newport, could wind up at the ICE detention facility.

26.     Upon information and belief, ICE informed potential contractors that it plans to hold most detainees at the ICE detention facility in Newport for fewer than 72 hours to avoid triggering heightened standards of care—which require more space and services—under the federal rules. But ICE has also acknowledged stays may exceed the 72-hour threshold, even though doing so would violate its own standards.

27.     In conferrals regarding the timing of discovery of this case, counsel for the State requested that Defendants provide a sworn declaration, declaring that Defendants do not intend to begin construction or open an ICE facility in or around Newport, Oregon before May 1, 2026. Defendants declined to provide such a declaration.

28.     On January 27, 2026, ICE acting Assistant Director for the Operations Support Division Ralph Ferguson executed a declaration, declaring that "ICE is not presently building a temporary holding/processing facility in or around Newport Municipal Airport. In addition, ICE has no plan or intention to begin construction or open an ICE facility in the City of Newport or at Newport Municipal Airport between now and until May 1, 2026." Ferguson Decl. ¶ 6.

29.     That declaration further provided that although "ICE had begun environmental compliance activities necessary to allow the U.S. Coast Guard (USCG) Air Facility at Newport,

Department of Justice
100 SW Market Street
Portland, OR 97201
(9716731880 / Fax: (9716735000

Oregon to be utilized by" ICE "as a proposed temporary holding/processing facility," the acting Commandant for the USCG removed that site from consideration on December 4, 2025. *Id.* ¶ 3.

30.     Nevertheless, the publicly available facts suggest that Defendants still intend to open an ICE detention facility on the Oregon Coast, likely in or around Newport.

31.     On or around December 7, 2025, a contractor posted multiple full-time job opportunities in Newport, Oregon that were "contingent upon successful contract award." Those positions included an "Assistant Health Services Administrator," (HSA) whose responsibilities included ensuring "adherence to government regulations, contractual requirements, and accreditation standards," including "ICE Performance-Based National Detention Standards." Preferred qualifications for the HSA position included "[e]xperience preferably in correctional, detention, military, or government-contracted healthcare environments" and "DHS or ICE detention center experience."

32.     On or around December 15, 2025, a contractor reached out to the City of Newport's Wastewater Supervisor regarding sewer disposal needed for a temporary full-service hotel in Newport after January 1, 2026. The contractor indicated that the disposal methodology will be via vacuum truck, the daily volume of black water will be between 80 and 130 gallons, and the daily volume of grey water will be between 9,600 and 15,600 gallons. The City of Newport is unable to accommodate or process this level of waste due to limitations in infrastructure.

33.     Upon information and belief, also on December 15, 2025, a contractor reached out to the City of Eugene because the contractor received a request to perform a job hauling residential wastewater from a site in Newport. The contractor estimated that the volume of hauled wastewater will initially total approximately 15,000 gallons per day, increasing to approximately 30,000 gallons per day.

Department of Justice
100 SW Market Street
Portland, OR 97201
(9716731880 / Fax: (9716735000

34.     On information and belief, although Defendants appear to have abandoned their efforts to use Newport Municipal Airport as an ICE detention facility, Defendants have shifted their efforts to another location on the Oregon coast, likely in or around Newport.

**B.     NEPA requires federal agencies to identify and evaluate significant environmental impacts of major federal actions and to issue an Environmental Impact Statement (EIS) or Environmental Assessment (EA)** *before* **taking final agency action.**

35.     The National Environmental Policy Act (NEPA), 42 U.S.C. § 4321 *et seq.*, requires federal agencies to identify and evaluate significant environmental impacts of major federal actions, as well as feasible alternatives, before taking final agency action. NEPA thus ensures that federal agencies and the public are aware of the environmental consequences of government projects and alternatives before the federal agency takes final action. Properly applied, NEPA helps agencies make better decisions and ensure good project management.

36.     NEPA requires federal agencies to prepare an Environmental Impact Statement (EIS) for any major federal action significantly affecting the quality of the human environment, or an Environmental Assessment (EA) if the agency action does not have reasonably foreseeable significant effects on the human environment, or if the significance of such effect is unknown.

37.     The EIS or EA must be prepared before the federal agency takes final agency action.

38.     Major federal actions include any action that is subject to "substantial Federal control and responsibility." 42 U.S.C. § 4336e(10)(A).

39.     The creation of an immigration detention center is an action that is necessarily subject to federal control and responsibility. The State of Oregon has neither authority nor jurisdiction to enforce federal immigration law. *See Arizona v. United States*, 567 U.S. 387 (2012) (holding that federal law preempts state immigration law enforcement). Indeed, Oregon statute forbids state and local governments from assisting the federal government with immigration enforcement. *See* Or. Rev. Stat. §§ 180.805, 181A.820–.829.

Department of Justice
100 SW Market Street
Portland, OR 97201
(9716731880 / Fax: (9716735000

40.     Before drafting an EIS, NEPA requires the head of the lead agency to "consult with and obtain the comments of any Federal agency which has jurisdiction by law or special expertise with respect to any environmental impact involved." 42 U.S.C. § 4332(C).

41.     An EIS must include a "detailed statement" addressing the following: (1) reasonably foreseeable environmental effects of the proposed agency action; (2) any reasonably foreseeable adverse environmental effects which cannot be avoided should the proposal be implemented; (3) a reasonable range of alternatives to the proposed agency action, including an analysis of any negative environmental impacts of not implementing the proposed agency action in the case of a no action alternative, that are technically and economically feasible, and meet the purpose and need of the proposal; (4) the relationship between local short-term uses of man's environment and the maintenance and enhancement of long-term productivity; and (5) any irreversible and irretrievable commitments of federal resources which would be involved in the proposed agency action should it be implemented. 42 U.S.C. § 4332(C)(i)–(v).

42.     An EA must include a discussion of (1) the need for the proposed action, (2) alternatives to the action, (3) the affected environment, (4) the environmental impacts of proposed action and alternatives, (5) other applicable environmental laws and executive orders, (6) a listing or summary of any coordinate or consultation undertaken with any federal agency, state or local government, federally-recognized Indian tribe regarding compliance with all applicable laws and executive orders, (7) identification and description of any mitigation measures considered, and (8) incorporation of documents by reference, if appropriate. 40 C.F.R. § 6.205(e).

**C.     Defendants' creation of an ICE detention facility on the Oregon Coast violates NEPA.**

43.     Defendants' decision to construct, maintain and fund an ICE detention center in or around Newport poses clear environmental impacts. A mass detention facility for 200 people could include the installation of housing units or tents, construction or utilization of sanitation and food services systems, industrial high-intensity lighting infrastructure, diesel power

BM2/jt3

Department of Justice
100 SW Market Street
Portland, OR 97201
(9716731880 / Fax: (9716735000

generators, substantial fill material altering the natural terrain, and provision of transportation logistics, all of which could significantly affect the quality of the human environment in and around Newport.

44.    Newport is at high risk to the impacts of a tsunami, especially a local tsunami generated by an earthquake along the Cascadia subduction zone. No feasible plan has been studied to evacuate detainees and personnel in the event of a tsunami or major flooding event.

45.    To the State's knowledge, no categorical exclusion from NEPA has been invoked by the Defendants, nor does any apply.

46.    To the State's knowledge, no exemption nor waiver of NEPA requirements has been invoked by Defendants, and none exist.

47.    There is no emergency that would warrant departure from NEPA's requirements, as NEPA contains no exception for emergencies.

48.    No public notice or hearing has been conducted in connection with the creation of an ICE detention facility in Newport.

49.    Defendants' decision to construct, maintain and fund an ICE detention facility in or around Newport, Oregon is a major federal action, as it involves the use of federal authority, approvals, funding and resources, and will have significant environmental impacts on an ecologically sensitive area. Those impacts, which to date have gone unevaluated, could logically include impacts to listed species, impacts to wetlands and surface waters, impacts due to increased activities in or around Newport, including traffic, tsunami and flooding preparedness, etc.

50.    To the State's knowledge, no EA nor EIS has been prepared by Defendants or any cooperating agency.

51.    The failure to conduct the required environmental review under NEPA violates federal law and deprives the public and affected stakeholders, including the State, of required procedures and procedural environmental protections.

Department of Justice
100 SW Market Street
Portland, OR 97201
(9716731880 / Fax: (9716735000

**D.    The CZMA requires Defendants to provide the State a consistency determination before constructing a detention facility.**

52.    The Coast Zone Management Act (CZMA) of 1972 provides that federal agency actions that affect any use or resource of the state's coastal zone, must be consistent to the maximum extent practicable with the federally approved enforceable policies of a state's coastal management program. 16 U.S.C. § 1456(c).

53.    A "federal agency activity" is "any function performed by or on behalf of a Federal agency in the exercise of its statutory responsibilities." 15 C.F.R. § 930.31.

54.    The U.S. Secretary of Commerce approved the Oregon Coastal Management Program on July 7, 1977. Or. Rev. Stat. § 196.425(1).

55.    A federal agency carrying out an activity in a coastal zone is required to provide the state a consistency determination no later than 90 days before the final approval of the activity, unless "the Federal agency and the State agency agree to a different schedule." 16 U.S.C. § 1456(c)(1)(C); 15 C.F.R. § 930.36(b). That determination includes whether an action has reasonably foreseeable direct and indirect effects on any coastal use or resource. 15 C.F.R. § 930.33. An "effect on any coastal use or resource" means "any reasonably foreseeable effect on any coastal use" resulting from a federal action and include direct and indirect effects which result from the activity and later in time. 15 C.F.R. § 930.11(g). Coastal uses include recreation and fishing. 15 C.F.R. § 930.11(b).

56.    Federal agencies are required to consider the enforceable policies of a management program "as requirements to be adhered to in addition to existing Federal agency statutory mandates." 15 C.F.R. § 930.32(2).

57.    Oregon's Statewide Planning Goal 19, "Ocean Resources" is an enforceable policy of the Oregon Coastal Management Program. Goal 19 provides in part that "State and federal agencies shall carry out actions that are reasonably likely to affect ocean resources and uses of the Oregon territorial sea in such a manner as to…protect and encourage the beneficial

Department of Justice
100 SW Market Street
Portland, OR 97201
(9716731880 / Fax: (9716735000

uses of ocean resources – such as navigation, food production, [and] recreation." Goal 19, Implementation Requirement 1.

58.    Coastal states are required to establish public notice procedures to relay the federal agency's determination that its planned action is consistent with the state's enforceable policies. 15 C.F.R. § 930.42.

59.    The affected State may concur or object to the federal agency's consistency determination. 15 C.F.R. § 930.35(c).

**E.    Defendants' plan to construct an ICE detention facility in or around Newport violates CZMA.**

60.    The State realleges each paragraph as set out above.

61.    Defendants' construction and establishment of an ICE detention facility on the Oregon coast is a final agency action that will have a reasonably foreseeable effect on coastal uses. Those reasonably foreseeable effects include those on fishing and recreation, resulting from the environmental impacts of housing up to 200 detainees and the accompanying human impacts such as significantly increased wastewater, transportation, and traffic.

62.    Although Defendants appear to have begun the process of completing a consistency determination regarding the ICE detention facility, upon information and belief, that consistency determination has not yet been completed.

63.    Defendants have not provided the State with any consistency determination regarding an ICE detention facility. Thus, the 90-day waiting period contemplated by the CZMA before development may begin has not started.

64.    The State has not agreed to receive a consistency determination regarding the ICE detention facility in fewer than 90 days before final approval of the ICE detention facility.

65.    The State has not yet provided the public notice required by 15 C.F.R. § 930.42 of an ICE detention facility on the Oregon Coast in or around Newport, because Defendants have not yet provided a consistency determination regarding that ICE detention facility.

Page 12 -  CONFORMING COMPLAINT
BM2/jt3

66.     The State would require no fewer than 90 days to review a consistency determination regarding the ICE detention facility and determine whether to concur or object to that consistency determination.

67.     Upon information and belief, Defendants intend to begin housing migrant detainees in or around Newport beginning in early 2026.

68.     Because Defendants cannot satisfy the CZMA's requirement to provide 90 days' notice of their consistency determination and begin housing migrant detainees in or around Newport in early 2026, Defendants intend to violate the CZMA.

**F.     The State is harmed by the construction of the ICE detention facility.**

69.     Oregon has a unique sovereign interest in the protection of the state's natural resources, including the dozens of fish and wildlife species that have been observed in and around Newport.

70.     Oregon has a unique sovereign interest in protecting the natural environment and the diverse fish and wildlife habitat located in and near Newport.

71.     Oregon's sovereign interest includes managing and protecting coastal resources and ecosystems and the quality of life in coastal communities for the benefit of current and future generations.

72.     Defendants' failure to ensure that its actions in or around Newport comply with NEPA and are consistent with Oregon's enforceable policies harms both Oregon's coastal resources and Oregon's interest in protecting those resources.

73.     The State is injured by Defendants' unlawful actions, which threaten the integrity of Newport's sensitive natural areas and health and human safety.

74.     The State is also injured by being deprived of critical information and a public process to analyze and address significant environmental impacts associated with the ICE detention facility. NEPA is a procedural statute and "a litigant vested with a procedural right, 'has standing if there is some possibility that the requested relief will prompt the injury-causing

Department of Justice
100 SW Market Street
Portland, OR 97201
(9716731880 / Fax: (9716735000

party to reconsider the decision' alleged to have harmed the litigant." *Nat. Res. Def. Council v. E.P.A.*, 542 F.3d 1235, 1246 n.6 (9th Cir. 2008) (quoting *Massachusetts v. E.P.A.*, 549 U.S. 497, 518 (2007)); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 572 n.7 (1992) ("The person who has been accorded a procedural right to protect [their] concrete interests can assert that right without meeting all the normal standards for redressability and immediacy.").

## CAUSES OF ACTION

### COUNT 1
### Violation of the Administrative Procedure Act (APA) —
### Action that is Contrary to Law: CZMA Review (16 U.S.C. § 1456(c))

75.    The State realleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

76.    Under the Administrative Procedure Act (APA), a Court must "hold unlawful and set aside agency action" that is "not in accordance with the law," "or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," or "without observance of procedure required by law…." 5 U.S.C. § 706(2)(A), (C)–(D).

77.    Defendants' decision to authorize construction of an ICE detention facility or authorize dispersal of funds to construct and maintain an ICE detention facility constitutes final agency action, which is reviewable under the APA, because it represents the "consummation" of the agency's decision-making process and represents action "from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 178 (1997) (citation and quotation marks omitted).

78.    Defendants have failed to provide a consistency determination that creating an ICE detention facility in or around Newport is consistent to the maximum extent practicable with federally approved enforceable policies of Oregon's coastal management program.

79.    And, in any case, Defendants' planned creation of an ICE detention facility in or around Newport is not consistent to the maximum extent practicable with the federally approved enforceable policies of the State's coastal management program.

80.    Accordingly, Defendants' actions are contrary to law, in violation of the APA.

Department of Justice
100 SW Market Street
Portland, OR 97201
(9716731880 / Fax: (9716735000

**COUNT 2**
**Violation of the Administrative Procedure Act (APA) —**
**Action that is Contrary to Law (NEPA (42 U.S.C. § 4321, *et seq.*))**

81.     The State realleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

82.     Defendants' decision to authorize construction of an ICE detention facility or authorize dispersal of funds to construct and maintain an ICE detention facility constitutes final agency action, which is reviewable under the APA.

83.     To the State's knowledge, Defendants have not consulted with any federal agency that has jurisdiction by law or special expertise with respect to any environmental impact involved with construction of the ICE detention facility in or around Newport.

84.     To the State's knowledge, Defendants have prepared neither an EIS nor an EA with respect to the construction of the detention facility in or around Newport.

85.     Defendants have approved or are implementing the construction of an ICE detention facility in or around Newport without providing the State and the public with an opportunity for notice and comment, and without adhering to required environmental review procedures under NEPA and other federal laws. Accordingly, Defendants have authorized the construction of an ICE detention facility in or around Newport before completing the analyses required by NEPA.

86.     The decision to proceed without notice, comment and without an EA or EIS constitutes final agency action and is subject to judicial review.

87.     Failure to conduct the required environmental review under NEPA deprives the public and affected stakeholders, including the State, of required procedures and procedural environmental protections. As a result, Defendants' actions are not in accordance with law under the APA.

88.     The State is entitled to injunctive and declaratory relief requiring compliance with NEPA before any further activity occurs with respect to the creation of an ICE detention facility in or around Newport.

Page 15 -  CONFORMING COMPLAINT
BM2/jt3

**COUNT 3**
**Violation of the Administrative Procedure Act (APA) —**
**Agency Action is Arbitrary and Capricious**

89.    The State realleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

90.    In addition to being contrary to law, Defendants' creation of an ICE detention facility in or around Newport is arbitrary and capricious because Defendants have not offered "a satisfactory explanation for [their] action, including a rational connection between the facts found and the choice made." *Ohio v. E.P.A.*, 603 U.S. 279, 292 (2024) (internal quotation marks and brackets omitted). Indeed, Defendants have offered *no* explanation.

**COUNT 4**
***Ultra Vires* Action —**
**Violations of the CZMA and NEPA**

91.    The State realleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

92.    The CZMA requires Defendants to provide a consistency determination before taking federal agency action that affects any use or resource of the State's coastal zone.

93.    By failing to provide a consistency determination before utilizing land in or around Newport, Oregon as an ICE detention facility, Defendants have violated the CZMA.

94.    NEPA requires Defendants to create an EIS or an EA before creating, funding or maintaining an ICE detention facility in or around Newport. Because Defendants failed to do so, Defendants have violated NEPA.

95.    For those reasons, the State is entitled to a declaration that development of the ICE detention facility is invalid and injunctive relief requiring Defendants to cease developing the ICE detention facility. Absent such relief, the State will continue to be harmed by Defendants' unlawful actions.

**PRAYER FOR RELIEF**

WHEREFORE, the State prays that the Court:

Department of Justice
100 SW Market Street
Portland, OR 97201
(9716731880 / Fax: (9716735000

a.    Declare that Defendants' decision to construct, maintain and fund an ICE detention facility in or around Newport, Oregon is *ultra* vires.

b.    Declare that Defendants' decision to construct, maintain and fund an ICE detention facility in or around Newport, Oregon is contrary to law and violates NEPA, the CZMA, and the APA.

c.    Declare that Defendants' decision to construct, maintain and fund an ICE detention facility in or around Newport, Oregon is arbitrary and capricious.

d.    Hold unlawful and enjoin Defendants' decision to construct, maintain and fund an ICE detention facility in or around Newport, Oregon.

e.    To temporarily restrain, preliminarily enjoin, and stay Defendants from constructing or maintaining an ICE detention facility in or around Newport unless and until Defendants comply with the CZMA, NEPA, and the APA.

f.    To set aside and vacate Defendants' authorization to construct an ICE detention facility or disperse funds to construct and maintain an ICE detention facility in or around Newport.

DATED January 30, 2026.

Respectfully submitted,

DAN RAYFIELD
Attorney General


_s/ Brian Simmonds Marshall_
BRIAN SIMMONDS MARSHALL #196129
NINA ENGLANDER #106119
Senior Assistants Attorney General
DEREK OLSON #225504
Assistant Attorney General
Trial Attorneys
Tel (971) 673-1880
Fax (971) 673-5000
Brian.S.Marshall@doj.oregon.gov
Nina.Englander@doj.oregon.gov
Derek.Olson@doj.oregon.gov
Of Attorneys for the State of Oregon

Department of Justice
100 SW Market Street
Portland, OR 97201
(9716731880 / Fax: (9716735000