Meriel L. Darzen, OSB # 113645
(503) 525-2725 | meriel@crag.org
Eric Wriston, OSB # 226130
(503) 525-2725 | eric@crag.org
CRAG LAW CENTER
3141 E. Burnside St.
Portland, Oregon 97214

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
EUGENE DIVISION

| | |
|---|---|
| STATE OF OREGON<br><br>Plaintiff,<br><br>v.<br><br>KRISTI NOEM, in her official capacity as Secretary of Homeland Security; UNITED STATES DEPARTMENT OF HOMELAND SECURITY; UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT; and TODD M. LYONS, in his official capacity as the Senior Official Performing the Duties of the Director of United States Immigration and Customs Enforcement,<br><br>Defendants. | Case No.: 6:26-cv-00186-AA<br><br>**PLAINTIFF-INTERVENORS-MOTION TO INTERVENE** |

**MOTION TO INTERVENE**

Pursuant to Federal Rule of Civil Procedure 24(a), plaintiff-intervenor-applicants Oregon Shores Conservation Coalition ("Oregon Shores") and Cascadia Wildlands (collectively "Applicants") respectfully move for leave to intervene as of right in the above-titled action. In the alternative, Applicants move for permissive intervention pursuant to Fed. R. Civ. P. 24(b). Counsel for Applicants has conferred with counsel for plaintiff State of Oregon and counsel for the Federal defendants. State of Oregon does not oppose the intervention. Counsel for Federal Defendants did not respond to the initial request for conferral but represented on the record at the January 28, 2026 status conference with Judge Aiken that they take no position on the proposed intervention. Pursuant to Fed. R. Civ. P. 24 (c), Applicants lodge with this motion Applicants' proposed complaint.

**MEMORANDUM IN SUPPORT**

**I.    INTRODUCTION AND BACKGROUND**

This case concerns whether Defendants can decide to construct a detention facility with impacts to sensitive coastal resources without first following required pre-decision environmental and land use procedures. Defendants have decided to fund, construct, and operate an immigration and detention facility at or around the City of Newport and the Newport Municipal Airport ("the Detention Facility"). Defendants have taken concrete action towards the construction of this facility, including hiring contractors and removing equipment from the existing Coast Guard operation at the Airport. Despite these actions, Defendants have failed to conduct review of the potential Detention Facility under the National Environmental Policy Act (NEPA) or review of the action's consistency with state and local regulations under the Coastal Zone Management Act (CZMA).

Applicants are both environmental organizations with a long history of engagement on environmental and land use issues across the Oregon Coast, including in the vicinity of the Detention Facility, specifically. Applicants each have many members that live near the Detention Facility and make frequent use of the trails, forests and beaches surrounding the facility for recreation, citizen science and other pursuits. Applicants seek to intervene as plaintiffs to pursue enforcement of NEPA and CZMA requirements that are central to Applicants' missions and to protect their interests and the interests of their members in preserving the coastal ecosystem surrounding the Detention Facility.

## II.     ARGUMENT

### A.     Applicants

#### 1.     Oregon Shores

Oregon Shores is a non-profit organization focused on protecting the unique ecosystems, landscapes, and communities of the Oregon Coast. Oregon Shores was founded in 1971 after passage of the Oregon Beach Bill, which reserved the public's right to enjoy the state's shoreline. Oregon Shores was created by advocates involved in passage of the Beach Bill in order to protect the state's beaches and broader coastal resources. In the more than 50 years since its founding, Oregon Shores has been actively involved in a wide array of land use and environmental issues on the Oregon Coast.

Oregon Shores pursues its mission through a combination of education, community science, enforcement, and policy advocacy. Oregon Shores has over 8,000 members and supports statewide, and over 300 members in the City of Newport. These members are united by a deep love for the Oregon Coast's beaches, headwaters, and people. Members frequently gather for educational events, beach walks, and beach cleanups. Through Oregon Shores' CoastWatch

Adopt-A-Mile Program, members volunteer to monitor changes along specific stretches of the coastline. Many of Oregon Shores' members are motivated to engage in this work because of their use of coastal waters like the Pacific Ocean and Yaquina Bay for recreation.

To uphold its members' interests, Oregon Shores frequently pursues enforcement of environmental and land use laws. This includes engagement with both federal and state agencies, including NOAA and the Oregon Department of Land Conservation and Development ("DLCD") in federal consistency reviews carried out under the CZMA. It also includes participation and submission of public comments on Federal projects that affect the Oregon Coast. Oregon Shores organizes its members to engage in these processes, including through its land use volunteer network—which seeks to educate coastal citizens about issues in coastal land use and provide them with the tools to get involved in local decision-making processes. Oregon Shores also uses information about the environmental impacts of projects affecting coastal areas contained in NEPA documents to inform both its members and the public. Information gathered in these processes is important to Oregon Shores' conservation work. Oregon Shores also believes that proper enforcement of applicable local, state, and federal land use and environmental laws is integral to its mission and to coastal resource and ecosystem preservation and protection. Accordingly, it advocates for the public's and local communities' rights to participation in applicable decision-making processes and for the procedural and substantive safeguards and provisions in NEPA and the CZMA, among other relevant Federal, State and local laws.

Oregon Shores also has a longstanding history of engagement in local and state rulemakings and legislative initiatives, many of which have contributed to Oregon's enforceable policies under the CZMA. For example, Oregon Shores participated in development of Oregon's

Territorial Sea Plan, which is an enforceable policy under the CZMA that guides uses that could impact the nearshore environment. A key focus of Oregon Shores' advocacy was establishing the marine reserves program, which is a part of the Territorial Sea Plan that protects sensitive areas of nearshore, ocean habitat. Otter Rock and Cape Perpetua are two of the vital habitat areas that are a part of this program, located a few miles north and south, respectively, of the City of Newport.

All of its coastwide advocacy efforts have led Oregon Shores to frequently engage in the issues relating to the areas around the City of Newport and the Newport Municipal Airport. Recently, for example, Oregon Shores engaged in an update to the Yaquina Bay Estuary Management Plan, a local land use plan that governs land use in and around Yaquina Bay, just west of the Newport Municipal Airport.

The coastal areas in and around the City of Newport and the Newport Municipal Airport are frequent locations for Oregon Shores' member events because many of its members live and recreate in the area on a regular, if not daily, basis. Oregon Shores has led multiple beach walks with its members on the beaches in the vicinity of this area. For example, in July of 2025, Oregon Shores hosted a beach cleanup alongside other organizations on Ona Beach-—just down the shore from the Newport Municipal Airport—aimed at improving habitat conditions for threatened Western snowy plovers.

### 2. Cascadia Wildlands

Cascadia Wildlands is an Oregon non-profit organization based in Eugene, Oregon. Representing over 12,000 members and members, Cascadia Wildlands is devoted to the conservation of the Cascadia Bioregion, which extends from northern California to southeastern

Alaska. Cascadia Wildlands uses a combination of education, organizing, outreach, litigation, advocacy, and collaboration to defend wild places and the animal species that call them home.

Cascadia Wildlands' members use the area surrounding the Detention Facility for a variety of professional and personal pursuits. These including hiking, walking, surfing, birdwatching and viewing threatened and endangered species such as the Marbled Murrelet and Western Snowy Plover and their habitat in the forests and beaches surrounding the Newport Municipal Airport.

Cascadia Wildlands has a long history of advocacy to protect these same endangered species. This is especially true of the Marbled Murrelet—a small seabird often described as a "flying potato"—which have been sighted in the vicinity of the proposed Detention Facility. Cascadia Wildlands frequently engages in NEPA and other environmental permitting and planning processes where the proposed action could impact the Marbled Murrelet and other species and habitats, and the information gathered in those processes informs their advocacy. Cascadia Wildlands successfully fought for listing of the Marbled Murrelet as endangered by the Oregon Fish and Wildlife Commission under the state threatened and endangered species statute, Or. Rev. Stat. §§ 496.171–496.192, which is an enforceable policy under the CZMA.

B.     **Standards for Intervention**

A party may intervene as a matter of right where: (1) its motion is timely; (2) the applicant asserts an interest relating to the property or transaction which is the subject of the action; (3) the applicant is so situated that without intervention, the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (4) the applicant's interest is not adequately represented by the existing parties. Fed. R. Civ. P. 24(a)(2). *W. Watersheds Project v. Haaland*, 22 F.4th 828, 835 (9th Cir. 2022). Courts interpret these

requirements broadly in favor of intervention. *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011).

District courts have broad discretion to grant permissive intervention. Fed. R. Civ. P. 24(b). So long as an applicant's motion is timely and its "claim or defense and the main action have a question of law or fact in common," a court may grant permissive intervention.

### C.     Applicants are entitled to intervene as a matter of right.

#### 1.     This motion is timely.

In determining whether a motion to intervene is timely, three factors are weighed: (1) the stage of the proceeding; (2) any prejudice to the other parties; and (3) the reason for and length of any delay. *Orange Cty. v. Air California*, 799 F.2d 535, 537 (9th Cir. 1986). Plaintiff State of Oregon filed its Conforming Complaint (ECF No. 1) on January 30, 2026 per the court's order in Case No. 6:25-cv-02165-AA (ECF No. 73). The court's order stated that intervenors should refile this motion within seven days (ECF No. 73 at 4), thus this motion is timely. Further, Intervenors previously filed a motion to intervene in Case No. 6:25-cv-02165-AA on January 23, 2026. *See* ECF No. 65. Plaintiffs interests are aligned with the claims related to the Detention Facility's failure to comply with the CZMA and NEPA and arose as a result of the information obtained by the State of Oregon and the City of Newport between November 2025 and January 2026. The CZMA and NEPA claims have yet to proceed to any substantive briefing and the case is still in very early stages. Courts have held that intervening before merits briefing or a ruling on the merits is timely. *See, e.g., Nw. Forest Res. Council v. Glickman,* 82 F.3d 825, 837 (9th Cir. 1996) (intervention motion was held timely when it was filed shortly after the complaint was filed); *Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1397 (9th Cir. 1995) (holding a motion to intervene timely when filed "before any hearings or rulings on substantive matters").

MTN. TO INTERVENE AND MEMORANDUM IN SUPPORT - 6

Intervention at this stage would not prejudice any parties because no substantive proceedings regarding the Detention Facility have occurred, the administrative record(s) have not been filed, and no briefing schedule has been set yet. There has been no delay, and granting the motion to intervene will not delay the course of the litigation.

### 2. Applicants' interests may be impaired by this litigation.

An applicant for intervention as of right must be "so situated that the disposition of the action <u>may</u> as a practical matter impair or impede the applicant's ability to protect that interest." Fed. R. Civ. P. 24(a) (emphasis added). There is no "clear-cut [test] or bright-line rule" for determining whether a movant has such an interest. *United States v. City of Los Angeles*, 288 F.3d 391, 398 (9th Cir. 2002). That said, a movant must establish its interest "is protectable under some law" and "there is a relationship between the legally protected interest and the claims at issue." *Wilderness Soc'y*, 630 F.3d at 1180 (internal quotation marks omitted).

Here, Oregon Shores is a land use, educational, and conservation organization with a mission of protecting the resources and communities of the Oregon Coast. Cascadia Wildlands is a conservation and education organization with a history of advocating for threatened and endangered species as well as their habitats, which will be potentially impacted by the Detention Facility. Both applicants have clear interests that will be impaired if Defendants are permitted to move forward with construction of the Detention Facility without complying with applicable laws.

Defendants have decided to construct an immigration detention facility in a sensitive coastal area without following the procedures of NEPA or the CZMA. These legal requirements protect Applicants' interests in preserving the surrounding environment and communities. The CZMA also ensures the integrity and implementation of Oregon's innovative land use planning

and substantive requirements. Defendants' lack of compliance with these laws threatens the health of coastal ecosystems and the future of communities that Applicants have worked for decades to protect. *See Sagebrush Rebellion, Inc. v. Watt,* 713 F.2d 525, 528 (1983) (granting intervention as of right to protect intervenor's "interest in the preservation of birds and their habitats"). Defendants' actions also harm Applicants' interest in the health of the environment surrounding the facility for its members' recreation and their own organizational events. *See Wilderness Soc'y v. United States Forest Serv.*, No. CV08-363-E-EJL, 2011 U.S. Dist. LEXIS 48835, at *7 (D. Idaho May 5, 2011) (granting intervention as of right for organizations to protect members' recreation rights). Finally, Defendants' actions frustrate years of policy advocacy engaged in by Applicants. Oregon Shores has long advocated for protective land use and environmental policies, which Defendants' actions seek to avoid. And Cascadia Wildlands has similarly advocated for protections for threatened and endangered species such as the Marbled Murrelet. *Cf. Idaho Farm Bureau Fed'n v. Babbit,* 58 F. 3d 1392, 1397 (1995).

### 3. The existing parties will not adequately represent Applicants' interests.

An "applicant-intervenor's burden in showing inadequate representation is minimal: it is sufficient to show that representation may be inadequate." *Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1498 (9th Cir. 1995), *abrogated in part on other grounds by Wilderness Soc'y*, 630 F.3d 1173 (2011). To evaluate adequacy of representation, courts consider three factors: "(1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect." *Id.* (citation omitted). This prong is satisfied where government representation of those interests "may have been inadequate." *Allied*

*Concrete & Supply Co. v. Baker*, 904 F.3d 1053, 1068 (9th Cir. 2018) (quoting *Californians for Safe & Competitive Dump Truck Transp. v. Mendonca*, 152 F.3d 1184, 1190 (9th Cir. 1998).

A proposed intervenor is adequately represented only if "(1) the interests of the existing parties are such that they would undoubtedly make all of the non-party's arguments; (2) the existing parties are capable of and willing to make such arguments; and (3) the non-party would offer no necessary element to the proceeding that existing parties would neglect." *Southwest Ctr. for Biological Diversity v. Babbitt*, 150 F.3d 1152, 1153-54 (9th Cir. 1998).

Here, the current Plaintiff does not adequately represent Applicants' interests. Applicants' interests include conservation of the surrounding ecosystems, reducing adverse impact to the organizations' operations and to their members usage of the surrounding area, and ensuring that their advocacy efforts for protection of threatened and endangered species and effective coastal land use planning are not undone. These interests are specific to Applicants and cannot be represented by the government plaintiffs, whose primary interest in the case is to represent the broad interest of all of their citizens. *Sagebrush Rebellion,* 713 F.2d at 528 (holding conservation group's interests are not adequately represented by governmental party because conservation group has separate "expertise" and a different "perspective"). The State of Oregon is not likely to make all of Applicants' arguments, which will be more focused on direct impacts to its members and to coastal ecosystems and local communities, and may not seek the same specific remedies. ECF No. 1 at 13.

**D.    In the alternative, Applicants satisfy the standard for permissive intervention.**

As set forth above, Applicants satisfy the requirements for intervention as of right under Fed. R. Civ. P. 24(a). In the alternative, if the court denies intervention as of right, the court should allow permissive intervention.

MTN. TO INTERVENE AND MEMORANDUM IN SUPPORT - 9

*Crag Law Center*
*3141 E Burnside St.*
*Portland, OR 97214*
*Tel. (503) 227-2725*

District courts have broad discretion to grant permissive intervention. Fed. R. Civ. P. 24(b). So long as an applicant's motion is timely and its "claim or defense and the main action have a question of law or fact in common," a court may grant permissive intervention. Here, the motion is timely, as the amended complaint was recently filed, and no parties will be prejudiced. Applicants intend to allege claims relating to the Federal governments' failure to comply with the CZMA and NEPA in connection with proposed detention center at or near the City of Newport and the Newport Municipal Airport and the nearby coastal area, which is at the heart of the current pleadings. Applicants represent an important interest – that of its members who live, work and recreate in and around the City of Newport and near the Newport Municipal Airport and who have an interest in the coastal resources, ecosystems, recreation areas, species and communities in the vicinity that will be directly affected by the construction and operation of the facility. It furthers judicial economy to allow Applicants to intervene as to avoid the filing of yet another separate case relating to these same facts. In sum, permissive intervention should be allowed.

### III.   CONCLUSION

For all of the foregoing reasons, Plaintiff-Intervenor-Applicants Oregon Shores and Cascadia Wildlands respectfully ask this Court to grant the Motion to Intervene.

Respectfully submitted this 3rd Day of February, 2026.

/s/ Meriel L. Darzen
Meriel L. Darzen (OSB # 113645)
Eric Wriston (OSB #226130)
Crag Law Center
3141 E. Burnside St.
Portland, OR 97214
503-525-2725
Email: meriel@crag.org
Email: eric@crag.org

*Counsel for Plaintiff-Intervenor-Applicants*

MTN. TO INTERVENE AND MEMORANDUM IN SUPPORT - 10

*Crag Law Center*
*3141 E Burnside St.*
*Portland, OR 97214*
*Tel. (503) 227-2725*